UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA, | 3:15-CR-30081-RAL |
|---|---|
| Plaintiff, | |
| vs. | OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |
| MERLE SEEKING LAND, | |
| Defendant. | |

Merle Seeking Land was sentenced on February 1, 2017, to 180 months of custody and 10 years of supervised release for Conspiracy to Distribute a Controlled Substance. Doc. 57. He now seeks compassionate release based on two tragic deaths in his family and the worsening health of his mother, which he argues constitute extraordinary and compelling reasons to reduce his sentence. Doc. 69 at 48-49. For the reasons explained, this Court denies his motion.

I.  **Factual Background**

On November 18, 2016, Seeking Land pleaded guilty to violations of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). Docs. 44, 45. This was Seeking Land's third federal felony conviction for a drug offense. See Doc. 51 at 3; United States v. Merle Francis Seeking Land, 3:04-CR-30095-01; United States v. Merle Seeking Land, 3:10-CR-30053-03. The Final Presentence Investigation Report (PSR) detailed Seeking Land's extensive role in a drug conspiracy that crossed state lines and involved multiple individuals. Doc. 51. In November 2014, Seeking Land began a conspiracy to distribute methamphetamine with Weston Big Eagle. Id. at 4. Seeking Land's role was to obtain and maintain drug connections. Id. From November 2014

1

to April 2015, Seeking Land lived with Big Eagle, and they received multiple packages in the mail containing large amounts of methamphetamine. Id. at 5. Pursuant to U.S.S.G. § 3B1.1(c) and U.S.S.G. § 4B1.1(b)(1), Seeking Land stipulated that he was an "organizer, leader, manager, or supervisor" in the criminal activity, and that he was a career offender with an offense for which the statutory maximum is life in prison. Doc. 44 at 4. Seeking Land is currently incarcerated at FCI Florence, a medium security federal correctional institution in Florence, Colorado. See Find an Inmate, Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (Federal Register No.: 12747-073). His scheduled release date is December 31, 2027. Id.

Seeking Land applied for compassionate release with the Bureau of Prisons (BOP) on January 23, 2024. Doc. 69 at 48. The BOP denied his request, id. at 53-54, and Seeking Land, through his counsel, then filed with this Court a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Seeking Land seeks compassionate release based on recent tragic family circumstances. Doc. 71 at 5. On October 28, 2023, his daughter TaeLonna passed away, leaving her daughter in the care of Carole Seeking Land (Seeking Land's mother, hereinafter "Carole"). Doc. 69 at 48. On December 27, 2023, Seeking Land's nephew Matthew passed away. Id. Carole apparently has suffered two heart attacks, the most recent on December 29, 2023. Id. at 50. Due to these circumstances, Seeking Land asserts that he is the only caregiver available for his granddaughter and mother and that he should be granted compassionate release. The United States opposes Seeking Land's request. Doc. 75.

## II.    Legal Standard

Sentences are final judgments, and under ordinary circumstances, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see also United States v. Olson, No. 3:19-CR-30133-RAL, 2021 WL 4478031, at *1 (D.S.D. Sept. 30, 2021). However,

2

the compassionate release statute, as amended by the First Step Act of 2018, provides an exception to this general rule. Section 3582(c)(1)(A) allows district courts to hear and decide motions for a reduced sentence filed by prisoners themselves, so long as the prisoner exhausted all administrative rights to appeal the BOP's failure to file a motion on the prisoner's behalf, or after 30 days have passed from the receipt of such a request by the warden of the prisoner's facility, whichever is earlier. Seeking Land submitted his administrative request for compassionate release to the warden of his facility, who subsequently denied his request. Doc. 69 at 48-54. Seeking Land, therefore, has exhausted his administrative remedies,[1] and his motion is ripe for review.

Under § 3582(c)(1)(A), a district court may grant a prisoner's motion for a reduced sentence after (1) the court finds that extraordinary and compelling reasons exist;[2] (2) those reasons are consistent with the applicable policy statement promulgated by the United States Sentencing Commission, here § 1B1.13; and (3) an examination of the § 3553(a) sentencing factors supports a sentence reduction. § 3582(c)(1)(A)(i)–(ii). Congress did not define "extraordinary and compelling reasons." See 28 U.S.C. § 994(t). Instead, Congress entrusted the Sentencing Commission with issuing general policy statements that outline the "appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c)," including "what should be considered extraordinary and compelling reasons for sentence reduction [and] the criteria to be applied." § 994(a)(2)(c), (t).

---

[1] The Eighth Circuit has held that the § 3582(c)(1)(A) exhaustion requirement is non-jurisdictional but rather serves as a "mandatory claim-processing rule" that must be enforced if raised by the opposing party. United States v. Houck, 2 F.4th 1082, 1084 (8th Cir. 2021). The United States does not raise any failure to exhaust argument. Doc. 75.
[2] A court may also grant a motion for a reduced sentence if the defendant is at least 70 years old and has served at least 30 years in prison, see § 3582(c)(1)(A)(ii), but Seeking Land meets neither of those requirements. Doc. 51 at 2-3.

3

Effective November 1, 2023, the Sentencing Commission updated the criteria for what constitutes "[e]xtraordinary and compelling reason[s]" to reduce a term of imprisonment. U.S.S.G. § 1B1.13(b). "Extraordinary and compelling reasons exist under any of the following circumstances or [through] a combination thereof": (1) medical circumstances of the defendant, (2) age of the defendant, (3) family circumstances of the defendant, (4) being a victim of sexual or physical abuse while in custody, (5) other reasons with equal gravity as the aforementioned circumstances, and (6) unusually long sentences. A "district court has broad discretion in determining whether proffered circumstances warrant" compassionate release under the First Step Act, United States v. Loggins, 966 F.3d 891, 893 (8th Cir. 2020), and it is the defendant's burden to establish that a sentence reduction is warranted. United States v. Avalos Banderas, 39 F.4th 1059, 1062 (8th Cir. 2022).

Seeking Land bases his motion for compassionate release on family circumstances under § 1B1.13(b)(3) and other circumstances, or a combination of circumstances, under § 1B1.13(b)(4). See Doc. 71 at 2.

### III. Discussion

#### A. Extraordinary and Compelling Reasons

##### 1. Family Circumstances of the Defendant

The policy statement identifies four situations in which the family circumstances of the defendant constitute an extraordinary and compelling reason to reduce the defendant's sentence. The first circumstance is "[t]he death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(A). The second situation is "[t]he incapacitation of the defendant's spouse or registered partner when the defendant

4

would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13(b)(3)(B). The third situation warranting early release is "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). The final situation involves similar circumstances in which any other immediate family member or individual of similar relationship is incapacitated, and the defendant is the only caregiver. U.S.S.G. § 1B1.13(b)(3)(D). Under this final situation, "'immediate family member' refers to [among others] . . . a grandchild . . . of the defendant." Id.

Seeking Land requests compassionate release "to help with raising [his granddaughter] and caring for [his] elderly mother." Doc. 69 at 49. Thus, his request falls under the third and fourth situations: "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent," and similar circumstances "involving any other immediate family member." U.S.S.G. § 1B1.13(b)(3)(C), (D).

To qualify for a reduction under U.S.S.G. § 1B1.13(b)(3)(C), the defendant's parent must be "incapacitat[ed]" and the defendant must "be the only available caregiver for the parent." Id. Seeking Land has established that his mother Carole has suffered two heart attacks, the most recent on December 29, 2023. Doc. 69 at 50. Seeking Land submitted a letter from Carole's primary medical provider that details her condition and treatment and further states, "[Carole] needs someone to live with her and provide assistance . . . in her home." Id. Carole thus appears to be incapacitated. See, e.g., United States v. Ortega, No. 17-20007-JAR-3, 2021 WL 5038791, at *3 (D. Kan. Oct. 29, 2021) (holding a letter from a doctor's office discussing defendant's mother's condition following a heart attack demonstrated incapacitation). However, Seeking Land has failed to demonstrate the second prong, that he is "the only available caregiver." Seeking Land states that his nephew Matthew who recently passed away was the "only other person on [their]

5

property to help." Doc. 69 at 49. However, Seeking Land did not account for his other family members. See Doc. 51 at 12 (indicating that Carole has four children, with one other than Seeking Land in custody). The letter from Carole's medical care provider states that currently, Carole's "daughter is taking time off from a full time job" to live with her and provide assistance. Id. at 50. While the Court sympathizes with these circumstances, Seeking Land did not meet his burden to show he is the only available caregiver for his mother under U.S.S.G. § 1B1.13(b)(3)(C). See United States v. Hall, No. CR JKB-04-0323, 2022 WL 2105975, at *3 (D. Md. June 10, 2022) ("Generally, compassionate release based on family circumstances has only been granted where a defendant is the sole available caregiver for his or her minor child or a closely-related and incapacitated adult.").

For similar reasons, Seeking Land does not qualify for a reduction under U.S.S.G. § 1B1.13(b)(3)(D). This section of the policy statement requires the defendant to establish that "circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member . . . when the defendant would be the only available caregiver for such family member." U.S.S.G. § 1B1.13(b)(3)(D). Immediate family member refers to a grandchild under this provision. Id.

Seeking Land argues that because of his mother's deteriorating health and the deaths of his daughter and nephew, he is the only caregiver available for his granddaughter. After Seeking Land's daughter died but before her heart attacks, Carole was caring for Seeking Land's granddaughter. Doc. 69 at 49, 51. The record is unclear about with whom Seeking Land's granddaughter lives. Compare Doc. 72-3 at 2 ("Carol[e] is now raising this beautiful little girl.") (Jan. 17, 2024), with Doc. 69 at 50 ("[Seeking Land's granddaughter] is living with an uncle . . . because of the coronary events suffered by [Carole].") (Jan. 8, 2024). To be granted compassionate

6

release, the burden is on Seeking Land to present evidence that he is the only available caregiver. United States v. Dones-Vargas, No. 4:17-CR-40086-KES, 2023 WL 4562017, at *6 (D.S.D. July 17, 2023) (citing United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). Here, Seeking Land has not met his burden, as many of the filings suggest that other caregivers are available for his granddaughter. See Doc. 72-3 at 2 (stating Seeking Land has a "strong support network of friends, family and mentors" at home); Doc. 69 at 50 ("[Seeking Land's granddaughter] is living with an uncle.").

Courts also consider whether the defendant acting as caretaker is in the best interest of the child. See, e.g., United States v. Hunter, No. 3:19-CR-182, 2021 WL 4942168, at *3-4 (S.D. Ohio Oct. 22, 2021). When considering a previous request for compassionate release from Seeking Land, this Court took guidance from the BOP Program Statement on U.S.S.G. § 1B1.13 regarding whether Seeking Land was fit to parent his minor children. Relevant factors to evaluate the best interests of the child include:

- Has the inmate committed violent acts before or during the period of incarceration as reflected in the PSR, institutional disciplinary records, or other appropriate documentation?
- Did the inmate have drugs, drug paraphernalia, firearms, or other dangerous substances in the home while caring for the child prior to incarceration?
- To what degree has the inmate had contact with or cared for the child prior to arrest, pretrial or pre-sentence, and during incarceration? . . . .
- Is there any evidence of child abuse, neglect, or exploitation in the PSR or other documents?
- Are there any documents regarding the inmate's parenting skills or obligations (e.g., child support orders, restraining orders for physical or emotional abuse of spouse, registered partner or children, certificates for classes in anger management or other types of counseling, removal of child from the home for any reasons)?
- Are there records regarding the termination of parental rights or loss of custody of the inmate's (other) child? . . .
- Has the inmate engaged in programming (e.g., parenting, anger management) during incarceration that would indicate efforts to improve parenting skills or that would indicate a commitment to caring for the child upon release?

*BOP Program Statement 5050.50* at 8-9, https://perma.cc/98YN-KRQX (updated Jan. 17, 2019; last visited Aug. 20, 2024).

Seeking Land failed to provide evidence that he would be eligible to have custody of his granddaughter, what his custodial rights would be, or his suitability to function as her primary caregiver. Additionally, the above factors weigh against his release to care for his granddaughter. Seeking Land has three felony convictions for drug distribution offenses, the last offense involving ties to organized crime and distribution of large amounts of methamphetamine in his community. Seeking Land's granddaughter was born after he was imprisoned, so Seeking Land never had care, custody, or control over the child. Despite this Court previously expressing skepticism about Seeking Land's fitness to parent any minor, Seeking Land has not enrolled in parenting classes since that time. Doc. 69 at 36.

### 2.     Combination of Circumstances and Rehabilitation

Seeking Land does not allege any other extraordinary and compelling reasons for his release, nor does the evidence support such a finding. However, he argues that pursuant to §§ 1B1.13(b)(5) and 1B1.13(d), the combination of his family circumstances and his rehabilitation warrant a reduction in sentence. See Doc. 71 at 6-7.

Under § 1B1.13(b)(5), the Sentencing Commission provided a catch-all provision allowing courts to find extraordinary and compelling reasons to a reduce a sentence when "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." This Court is sympathetic to the difficulties Seeking Land and his family have faced following the tragic deaths of his daughter and nephew and the worsening condition of his mother. Those circumstances, even in combination,

8

do not warrant early release, however, unless Seeking Land is able to demonstrate that he is the only caregiver available for his granddaughter and mother. He has not done that here.

Section 1B1.13(d), further states that rehabilitation of the defendant, though not itself an extraordinary and compelling reason, "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." This Court recognizes Seeking Land's efforts at rehabilitation while imprisoned. Seeking Land has had only one instance of misconduct, which occurred five years ago. Doc. 69 at 34. Seeking Land has taken several classes, including business and leatherwork. Id. at 36. While Seeking Land's efforts at rehabilitation are laudable, those efforts do not constitute extraordinary and compelling reasons for release because rehabilitation cannot be the sole factor in a sentence reduction. 28 U.S.C. §994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

This Court has fully considered all of Seeking Land's alleged extraordinary and compelling grounds for release individually. Even in combination with one another and considering Seeking Land's efforts at rehabilitation, they do not meet the standards articulated in §§ 1B1.13(b)(1)–(4) and 1B1.13(d).

**B. Section 3553(a) Sentencing Factors**

Although a court need not consider the § 3553(a) factors when there are no extraordinary or compelling reasons to reduce a sentence, United States v. Brown, No. 4:18-CR-40138–LLP, 2023 U.S. Dist. Lexis 83723, *12 (D.S.D. May 9, 2023), a review of the § 3553(a) factors weighs against granting Seeking Land compassionate release. The § 3553(a) sentencing factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--

9

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing Commission] guidelines . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a). These factors inform the Court's duty to ensure the sentence imposed is "'sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)[]." Pepper v. United States, 562 U.S. 476, 491 (2011).

The "nature and circumstances of the offense and the history and characteristics of the defendant," weigh against a reduction in Seeking Land's sentence. The nature and circumstances are outlined in the PSR. Seeking Land acted as the direct connection between out of state distributors of methamphetamine and dealers who sold large amounts of methamphetamine in tribal communities. Doc. 51 at 4-5. Seeking Land had involvement with at least 1.5 kilograms but less than 5 kilograms. Id. at 5. The crime was especially serious because of Seeking Land's two previous convictions for drug felonies. Id. at 3, 8-9.

Seeking Land's personal history and characteristics include a struggle from his early teen years with substance abuse, particularly involving methamphetamine. Id. at 15-16. He has some employment history but received a 63-month sentence in 2004 and a 78-month sentence in 2010 as a result of methamphetamine trafficking, among other criminal convictions. Id. at 8-9. Seeking Land had five children from three different mothers. He has little relationship with the oldest and

youngest children, and his middle three children were taken into Department of Social Services custody and placed with his mother Carole. Id. at 11-13.

Seeking Land's original sentence was designed to deter not only Seeking Land from committing similar crimes, which his prior convictions apparently had not, but also to protect the public from further conspiracies to distribute methamphetamine. This Court determined that a sentence of 180 months was sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

After thoroughly reviewing the record of this case in light of the remaining § 3553(a) factors, including the kinds of sentences available, the need to avoid unwarranted sentencing disparities, and the need to provide educational, vocational, or correctional treatment in the most effective manner, this Court concludes that these factors are not served by a reduced sentence.

### IV. Conclusion and Order

Seeking Land has failed to meet his burden to show extraordinary and compelling reasons to justify compassionate release at this time, and even if such reasons did exist, the § 3553(a) factors counsel against a reduction in his sentence.

Therefore, it is hereby

ORDERED that the Motion for Compassionate Release, Doc. 70, is denied.

DATED this 21st day of August, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

11